# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

(U.S. Courthouse, 17 South Park Row, Erie, Pennsylvania 16501    )

| | |
|---|---|
| Ronald Satish Emrit,              ) | |
|     Plaintiff (Pro Se)          ) | |
|                       ) | C. A. No.: **1:2020cv00041** |
|        v.                ) | |
|                       ) | |
| Federal Bureau of Investigation,  ) | |
|     Defendant                  ) | |
|                       ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>AMENDED COMPLAINT</u>

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this complaint against the sole governmental defendant for the causes of action amounting to the **wrongful institution of legal proceedings/malicious prosecution** in addition to the tortious invasion of privacy through intrusion upon seclusion and "false light" in addition to the intentional infliction of emotional distress amounting to extreme and outrageous conduct.  In bringing forth this complaint, the plaintiff states, avers, and alleges the following:

## <u>I.) NATURE OF THE CASE</u>

1.) In addition to having committed the aforementioned tortious acts, the
    plaintiff also alleges that the sole governmental defendant has committed a
    violation of the Equal Protection Clause and Due Process Clause of the Fifth
    and Fourteenth Amendments in addition to the Privileges and Immunities

**FILED**

MAR 23 2020

Clause or "Comity Clause" of Article IV, Section 2, Clause 1 of the Constitution.

2.) The plaintiff alleges that the sole defendant should not be entitled to the Eleventh Amendment doctrine of sovereign immunity with regards to these causes of action specifically because no governmental defendant such as the FBI would waive its right to sovereign immunity in any jurisdiction.

3.) The plaintiff also argues that these causes of action are not barred by the Federal Tort Claims Act (FTCA), and that the sole governmental defendant has committed an inherent violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990.

4.) Furthermore, the plaintiff alleges that the sole governmental defendant has violated the plaintiff's Fourth Amendment rights to reasonable expectation of privacy (see ***Katz v. United States***), and that the exclusionary rule and fruit-of-the-poisonous-tree doctrine (notwithstanding the attenuation doctrine and rule of inevitable discovery) should be applied to any unlawful surveillance conducted by the sole governmental defendant specifically because said defendant has lacked any reasonable suspicion or probable cause with regards to conducting surveillance on the plaintiff dating back to at least 2001.

5.) Finally, the plaintiff argues that there should be the equitable remedy of an injunction imposed by the court mandating that the sole defendant provide an unredacted copy of the reports of its agents' surveillance conducted on the plaintiff (which may need to be de-classified and disclosed as part of a subpoena duces tecum in the discovery process) dating back to at least 2001.

## II.) PARTIES TO THIS LITIGATION

6.) The plaintiff is an indigent, disabled, and unemployed resident of the state of Nevada. His current mailing address is 6655 38th Lane East, Sarasota, FL 34243. His cell phone number is currently (703)936-3043 and his primary email address is einsteinrockstar2@outlook.com. The plaintiff is filing this cause of action in the U.S. District Courts of Southern Florida, Middle Florida, and Northern Florida because of the fact that the plaintiff attended law school at Saint Thomas University School of Law in Miami Gardens, Florida and also took the bar exam at Ybor City in Tampa, Florida back in 2004 (which is administered by the Florida Board of Bar Examiners domiciled in Tallahassee, Florida in the Northern District of Florida). The plaintiff also took the Multi-state Professional Responsibility Exam (MPRE) at the Broward Convention Center in Fort Lauderdale back in 2005 (i.e. Broward County, Florida).

7.) The sole defendant is the Federal Bureau of Investigation or FBI which is known as the most powerful law enforcement agency in the United States and perhaps the world and which is a political sub-division of the Cabinet-level agency known as the Department of Justice which also oversees other law enforcement agencies such as ATF, U.S. Marshals, and DEA. The mailing address of the FBI is 935 Pennsylvania Ave NW, Washington, DC 20535 and their phone number is (202) 324-3000

### III.) JURISDICTION AND VENUE

8.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;"

9.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

10.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the Western

District of Pennsylvania (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the sole defendant.

11.) As an Article III court, the U.S. District Court for the Western District of Pennsylvania also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause.

12.) Therefore, a federal question is presented by the implication of the black-letter law of the aforementioned federal statutes in addition to the discussion of Constitutional Law provisions.

13.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

14.) Because the amount in controversy exceeds $75,000 (i.e. $80,000 is greater than $75.000), this court also has jurisdiction with regards to that particular issue.

### IV.) STATEMENT OF FACTS

1.) The plaintiff is discussing various legal concepts and aspects of bizarre "Weird Science" to prove to the court that his lawsuit against the FBI is not frivolous and involves the presentation of a larger narrative and the proper context which involves subtleties and nuances amounting to exculpatory information as it relates to the proverbial **"actus reus"** and **"mensrea"** and **specific intent/general intent/negligence** in alleged "**malum in se**" or "**malum prohibitum**" violations.  Because of the fact that the plaintiff is a law school graduate, he happens to know that U.S. attorneys, district attorneys, and/or attorneys general get disbarred for committing **"Brady violations"** when they fail to disclose exculpatory information in bad faith which also constitutes a lack of the duty of candor to the tribunal.

2.) The plaintiff also argues that there are "honest mistakes" which should be disclosed by all parties under penalty of perjury and that there is a "fine line" between "honest mistakes" and **"malum prohibitum"** or **"malum in se"**

violations of the law which is why providing the proper context is of extreme and tantamount importance.

3.) With that being said, the plaintiff/appellant intends to raise on appeal and argue in his appellate brief a new set of facts which are both conditionally and logically relevant to his case against the Federal Bureau of Investigation (FBI) because they tend to provide a larger narrative or "the big picture" rather than revealing separate pieces of the puzzle which have yet to be connected to show the larger narrative.

4.) While the plaintiff did not raise this new set of facts in his complaint and may be precluded from raising this new set of facts on appeal, the plaintiff argues that he could draft and submit an amended complaint with the new set of facts and/or larger narrative if and only if (iff) the present case at bar is remanded back to the lower court with a specific set of instructions that the amended complaint should be adjudicated upon its merits given that there is a justiciable case or controversy which does not involve a political question, the rendering of an advisory opinion, an ex post facto law, or an unconstitutional bill of attainder.

5.) Because of the fact that the plaintiff wants to submit an amended complaint with a new narrative if and only if (iff) this notice of appeal could lead to a re-opening of the case in the lower court pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure (FRCP), the plaintiff/appellant argues that there should be a de novo standard of review based on a "clearly erroneous" decision in the lower court which also amounts to an "abuse of discretion" by the district court judge who dismissed the case as frivolous.

6.) In the year 2016, the plaintiff reached a settlement agreement/stipulation with Seven Hills Behavioral Hospital of Henderson, Nevada and was provided with a settlement check in the approximate amount of $7,500 by Brittany Llewellyn of Lewis-Brisbois law firm off of Rainbow Boulevard in Las Vegas, Nevada.  The plaintiff/appellant was informed by Brittany Llewellyn that he would not have to sign and/or fill out any tax paperwork for this $7,500 (such as an IRS Form W-9) because of the fact that "punitive damages are not taxable as income" (paraphrased statement).  Nevertheless, the plaintiff/appellant exercised due diligence in asking for this tax

paperwork and trusted Ms. Llewellyn's judgment because she was an attorney representing Seven Hills with a major law firm.  The plaintiff/appellant would later find out that certain types of compensatory damages are not taxable as income and that punitive damages are taxable.  Therefore, the plaintiff made the logical and reasonable assumption that Brittany Llewellyn, Esquire made an honest mistake and meant to say that the plaintiff/appellant would not have to fill out any tax paperwork with the IRS because "compensatory damages are not taxable."  The relevant case-law applicable to the taxation of certain types of compensatory damages and punitive damages as "accessions to wealth" and/or "realization of capital gains" is governed by the stare decisis/persuasive precedent of the common law tax cases of ***Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955), Eisner v. Macomber, 252 U.S. 189 (1920), Pollock v. Farmers' Loan & Trust Company, 157 U.S. 429 (1895), South Carolina v. Baker, 485 U.S. 505 (1988)***, Wilson-Gorman Tariff Act, McKinley Tariff, and Sixteenth Amendment to the United States taxation governing the apportionment of taxes.

7.) On or around 2012, the plaintiff communicated with Ben Dayan who graduated from University of Miami and was the manager of an artist named "Dirtbag" or Jermany James.  Although the plaintiff is not completely sure, he believes that he met Ben Dayan from a Craigslist advertisement (past recollection recorded may be necessary).  Ben Dayan emailed the plaintiff a publishing deal that "Dirtbag" signed with Universal Music Corporation. The publishing deal was signed by David Renzer of Universal and provided that a gentleman by the name of Eric Nicks from New York was the fiduciary for "Dirtbag."  Ben Dayan broadly asked the plaintiff/appellant in the present case at bar (i.e. Ronald Satish Emrit) to email Dirtbag's contract around to entertainment attorneys, law enforcement officers, banks, managers, publicists, and/or other legal or music industry professionals to find out if there was anybody who could help Dirtbag get out of this procedurally and substantively unconscionable publishing deal with the Universal Music Corporation that appeared to contain a clause called

"Minimum Delivery Release Commitment" although the publishing deal
contained no cross-collateralization clause or controlled composition clause
which is typical of "360 deals" and "demo deals" and other types of
commercial recording contracts in the custom and usage of the music
business (in the ordinary course of business and pursuant to prior course of
dealings as industrial routine). Pursuant to Rule 201 of the Federal Rules of
Evidence (FRE), the court should take judicial notice that there are no
licensing requirements to be a publicist in the entertainment industry
although having a Bachelor's Degree in public relations or a related field is
recommended. Therefore, because of the plaintiff's communications with
Ben Dayan of Miami (i.e. the manager/fiduciary of Dirtbag/Jermany James),
the plaintiff/appellant in the present case at bar had the express, implied,
actual, and apparent authority to bind Dirtbag/Jermany James to contract
although in this situation, Ben Dayan and Dirtbag were trying to rescind the
contract that Dirtbag/Jermany James signed with Universal Music
Corporation. However, the plaintiff/appellant noticed that Ben Dayan and
Dirtbag forgot to redact Dirtbag's Social Security Number (SSN) which was
provided on the publishing deal with the Universal Music Corporation
before Ben Dayan emailed Dirtbag's publishing deal to the
plaintiff/appellant (i.e. Ronald Satish Emrit). The plaintiff argues that this
"honest mistake" does not amount to gross negligence, breach of fiduciary
duty, and/or the tortious invasion of privacy on the part of Ben Dayan or the
plaintiff/appellant both of whom had the actual, apparent, express, and
implied authority to bind Dirtbag/Jermany James to contract or to have his
publishing deal with Universal unilaterally rescinded (thereby discharging
express and constructive conditions of the publishing deal). The business
relationships between Ben Dayan, Dirtbag/Jermany James, and the
plaintiff/appellant (i.e. Ronald Satish Emrit) are governed by the laws of
agency and partnership.

8.) In the 2014 case of ***Emrit v. Yahoo***, Judge Saundra Brown Armstrong of the
Northern District of California in Oakland, California thought that the
plaintiff intentionally omitted material information from his IFP application
which is simply a miscalculation on Judge Armstrong's part. More

specifically, Judge Saundra Brown Armstrong thought that the plaintiff intentionally omitted his probate legacies from his aunt Delores Agnes Morris who lived at 3906 21st Street in NE Washington, DC. The decedent/testatrix of the estate was Delores Agnes Morris and the executrix was Jocelyn Mason of Washington, D.C.. It is assumed that the will was properly attested to and was not a written holographic will drafted under duress, coercion, and/or undue influence such as the case of ***Latham v. Father Divine***. Furthermore, it is assumed that there are no issues involving dependent relative revocation, Uniform Simultaneous Death Act, ademption, the anti-lapse statute, and/or acts of independent significance. To clarify, the plaintiff received two probate legacies from Delores Morris in the approximate amount of $15,000 each, and the probate lawyer/attorney was Linda Aikens, Esquire of Silver Spring, Maryland. The plaintiff only received two legacie and was not devised any land or bequested any personal effects. The plaintiff was also told that these bequests are not taxable at the federal level (just like Brittany Llewellyn, Esquire told the plaintiff that punitive damages are not taxable when she presumably meant to say that certain types of compensatory damages are not taxable) and the plaintiff also learned that either Washington, D.C. are the state of Maryland does not have any inheritance tax. With regards to Judge Armstrong's allegation that the plaintiff intentionally omitted the two probate legacies from his IFP application, the exculpatory and circumstantial (or direct/trace) evidence arrives in the form of the other IFP applications submitted around that time or prior to that time which can be accessed by any U.S. attorney or legal professional on PACER or CM/ECF. The plaintiff also remembers running out of room on that IFP application with regards to Emrit v. Yahoo, supra; the case of Emrit v. Yahoo, supra seems to be studied at Santa Clara law school in California and is in the school's archives.

9.) With regards to the Ninth Circuit case of ***Coulson v. Southern Nevada Movers, Case No. 2:16-cv-01989-RFB-NJK.*** The court should also take notice that ghostwriters of pro se litigation are protected by the Ninth Circuit case of ***United States v. Kimsey, No. 10-16800 (9th Cir. 2012)*** in which James Kimsey was prosecuted by the office of U.S. attorney Daniel Bogden

for violation of **18 U.S.C. § 402** (i.e. criminal contempt) and the misdemeanor of unauthorized practice of law (upl) which is a misdemeanor in the state of Nevada. The plaintiff provided pro bono publico assistance in law school for a matter related to intellectual property (with no attorney present to monitor the pro bono publico assistance) and many attorneys make pro hac vice appearances in jurisdictions in which they are not licensed to practice law. Needless to say, Law students or paralegals who provide pro bono publico assistance and lawyers who make pro hac vice appearances are not committing the unauthorized practice of law in any state and under any broad interpretation of the Rules of Professional Conduct regulated by the state bar association in the particular state. Furthermore, to try to appeal or overturn United States v. Kimsey, supra in the Supreme Court would be a violation of the Double Jeopardy Clause in the criminal context (similar to claim preclusion, res judicata, and/or collateral estoppel in the civil context).

10.)    President George W. Bush signed into law the Can-Spam Act of 2003 which the plaintiff argues is a content-based restriction on free speech (it is not content neutral) protected by the First Amendment which would require a strict scrutiny test in which it would have to be shown that the Can-Spam Act of 2003 is "narrowly-tailored to a compelling government objective." The Federal Trade Commission (FTC) enforces the Can-Spam Act of 2003 by levying fines against businesses, corporations, and individuals that send out "unsolicited commercial emails" which are anonymous, fraudulent, and/or misleading and they usually have to have opt-out provisions at the bottom of the email with an address. The plaintiff used a company called Constant Contact in 2019 to send out commercial emails related to his songs and music videos although most of the plaintiff's emails are not "commercial" in nature because of the fact that he is not trying to sell anything and is merely sending out emails for discussion, educational, and/or scientific/literary value. President Bush launched an illegal war against Iraq and had a questionable relationship with a woman named Margie Schoedinger from Sugarland, Texas. However, this allegation by Margie Schoedinger has never been substantiated and public figures like

athletes, entertainers, and politicians often get accused of the kind of offenses of which Margie Schoedinger accused President Bush at the time.

11.)  The plaintiff would also like to illustrate that in this new era of Google searches and Google images searches, anything that appears on a Google Images search is in the "public domain" and does not involve any issues of copyright violations, trademark violations, invasion of privacy, or the usage of "likeness."  More specifically, the re-distribution of copyrighted material on the internet (which of course is not for monetary gain which would be a form of "bootlegging" and constitute criminal copyright infringement rather than civil copyright infringement) is protected by the Fair Use Doctrine of the Copyright Act of 1976 and Creative Commons law.  It is similar to a teacher or professor making xerox copies of a copyrighted textbook and passing the xeroxed copies out to students in his or her class.

12.)  Accordingly, the plaintiff believes that he is the third chapter in the "Albert Einstein/Stephen Hawking" quest to solve Unified Field Theory, i.e. "The Theory of Everything."

13.)  The plaintiff asserts that Albert Einstein and Stephen Hawking were unable to discover and/or find out that black holes are connected to white holes by wormholes (i.e. Einstein-Rosen bridges) and that white holes open up into a ten-dimensional Calabi-Yau manifold (i.e. an extra 6 dimensions) which obeys Kaluza-Klein Theory, the principles of heterotic and bosonic string theory, and the laws governing quantum physics and general theory of relativity.

14.)  The plaintiff also asserts that Albert Einstein and Dr. Stephen Hawking were unable to figure out that all three forces in nature (i.e. electroweak, strong, and gravity) are united at the gravitational singularity of supermassive black holes and perhaps stellar mass black holes.

15.)  The supermassive black hole at the center of the Milky Way Galaxy is referred to as Sagittarius A* and earth is in the Perseus Arm of the Milky Way Galaxy, which is a barred spiral galaxy as opposed to a lenticular or elliptical galaxy.

16.)  The Wilkinson MIcrowave Anisotropy Probe (WMAP) and Cobe Satellite used to monitor cosmic microwave background radiation which is a

remnant from the Big Bang and was discovered by Arno Penzias and Robert Wilson in New Jerse who were later awarded the Nobel Prize for discovering cosmic microwave background radiation.

17.)   Arno Penzias and Robert Wilson were able to discover cosmic microwave background radiation because of the fact that pigeons kept returning to their satellite dish which the plaintiff believes is related to the Pigeonhole Principle in Number Theory (taught by Edward Burger at Southwestern University through The Great Courses or Teaching Company with its principal place of business (ppb)/nerve center in Chantilly, Virginia) and to similar concepts of the Diophantine Approximation, Sturm-Liouville Theory, Riemannian manifolds, Gaussian surfaces, Dirichlet boundaries, and Riemann Zeta function.

18.)   In the patent law case of ***Diamond v. Chakrabarty, 447 U.S. 303 (1980)***, a scientist was able to patent a microorganism that cleaned up oil spills. Given that we are currently going through a crisis with the Coronavirus (i.e. Covid-19), I believe that a scientist or doctor at NIH/CDC/FDA/HHS can find a cure to the coronavirus similar to the way that the scientist in Diamond v. Chakrabarty, supra designed a microorganism to clean up oil spills.

19.)   This would result in compulsory licensing of generic pharmaceuticals to cure Coronavrus (Covid-19) in Less Developed Countries (LDC's) and according to Trade Related Aspects of Intellectual Property (TRIPS) as part of the General Agreement on Tariffs and Trade (GATT) which was promulgated by the World Trade Organization (WTO) and/or Bretton Woods meeting.

20.)   With regards to the United States Patent and Trademark Office (USPTO) under the Department of Commerce (under Secretary Wilbur Ross), there are documents associated with a Continued Prosecution Application (CPA), Request for Continued Examination (RCE), and Notice of Allowance (NOA) for inventing or discovering cures to diseases such as the Coronavirus (Covid-19) and this is in accordance with International Applications (IA) submitted in compliance with the Patent Cooperation

Treaty and with the World Intellectual Property Organization (WIPO) and regulated by Title 35 of the United States Code and related provisions under the Federal Register and Code of Federal Regulations (CFR).

21.) The plaintiff has looked in the Catalogue of Federal Domestic Assistance (CFDA) to try to apply for a grant from the federal government given his entrepreneurial spirit to try to invent something and have it patented with USPTO under the Department of Commerce.

22.) The plaintiff believes that _Diamond v. Chakrabarty,_ supra is related to the yellow diamond on the Brazilian flag which connects the "twin cities" of Minneapolis/Saint Paul, San Francisco/Oakland, Dallas/Fort Worth, and Washington D.C./Baltimore.

23.) These twin cities in a "yellow diamond" are connected to binary star systems such as Sirius A and Sirius B which were important to the Dogon People of the Congo and Bandiagara Escarpment in central Africa.

24.) The "blue planet" on the Brazilian flag can also be thought of as a blue giant star which is a main sequence star on the Hertzsprung-Russell diagram.

25.) Back in 1997, Rachel Stuart mentioned the plaintiff's name on her show Planet Groove on BET as she thanked the plaintiff for sending her flowers on Valentine's Day (the plaintiff and his jarhead/Marine friend Henry Brown were on their way to Atlanta, Georgia for a black Greek /Hellenic council event called Freaknik.

26.) In 1997, the drove from Memphis, Tennessee to Parris Island, South Carolina as he visited his friend Henry Brown when he graduated from Parris Island, South Carolina before he was sent off to Twenty Nine Palms, California and Japan.

27.) Henry Brown was prosecuted for aggravated assault by Maricopa County prosecutor Cindy Winters on or around 2011 and the plaintiff sent letters to Cindy Winters, Esquire to try to advocate on behalf of his "jarhead friend" getting some kind of probation or suspended sentence in which he would be mandated by the court to attend a 12-step program such as "Alcoholics Anonymous" since he struck a man named Carl Engleman with a beer mug at a bar in Phoenix involving Henry Brown's friend Eric Scott.

28.)   The plaintiff also communicated with Detective Matthew Leal who investigated domestic violence crimes in Scottsdale, Arizona because Henry Brown and his girlfriend's family were somehow receiving threatening messages on Facebook from members of the bloods gang in the Phoenix area.

29.)   Nevertheless, the plaintiff believes that the Yagi-Uda antenna display at the Goddard Space Flight Center (GSFC) in Greenbelt, Maryland is somehow connected to the Very Large Array (VLA) in Socorro, New Mexico and the Search for Extraterrestrial Intelligence (SETI), Drake Equation, Lagrange points, Jungle Hypothesis, and the pharaoh Seti I.

30.)   The plaintiff also believes that Socorro, New Mexico forms a "Bermuda Triangle" with Los Alamos, New Mexico (famous for the Manhattan Project and J. Robert Oppenheim and Leo Szilard) and Roswell, New Mexico (connected to Doswell, Virginia and King's Dominion).

31.)   The Roswell event occurred in 1947, i.e. the same year that Jack KIlby invented the integrated circuit and also the same year that President Harry Truman (i.e. a 33rd degree freemason) started the Office of Strategic Services (OSS) which would become the precursor of the Central Intelligence Agency (CIA).

32.)   The Directorate of Operations (DO) at CIA would later become the National Clandestine Service (NCS) which presumably also monitors Non-Official Cover (NOC).

33.)   The Riverbank Acoustic Laboratory in Illinois appeared to be the precursor of the National Security Agency (NSA) based in Fort Meade, Maryland (which the plaintiff visited in 2007 with his cousin's husband Allen Cole of the Coast Guard).

34.)   The plaintiff has also been to Offutt Air Force Base (in Omaha, Nebraska), Hill Air Force Base (in Salt Lake City, Utah), Fort Riley (in Kansas), and Wright-Patterson Air Force Base by Dayton, Ohio.  The plaintiff was at Offutt AFB around the same time that President George W. Bush was present there.

35.)   Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court can take judicial notice that the famous Nikola Tesla (who discovered

alternating current and was helping George Westinghouse during Niagara Falls contract negotiations against JP Morgan and Thomas Edison who were advocating on behalf of direct current or DC) also spent some significant time at Wright-Patterson AFB as he was researching a "Tesla Ray."

36.) The court can also take judicial notice that Operation Paperclip during WWII involved the United States adding the brilliant German scientist Werner von Braun to their research team.

37.) While the plaintiff has filed lawsuits against FBI in Miami, Orlando, and Gainesville, the "Bermuda Triangle" of Los Alamos, Socorro, and Roswell is substantially similar to structures created by the Hopi Indians in Arizona which are in alignment with the constellation and/or asterism of Orion's Belt and similar to the Pleiades or "Seven Sisters."

38.) The riddle of the sphinx is related to the Bermuda Triangle and the location of Atlantis at Hy Brasil (off of the coast of Ireland) which was a location received in the form of binary code by two soldiers at the Rendlesham Forest INcident, i.e. the Roswell for the United KIngdom.

39.) Like the Oedipus Complex, the riddle of the sphinx invokes the Socratic Method, "What do the Bermuda Triangle, the magic square of the roman empire, and the Pentagon all have in common?"

40.) The answer to this riddle is that "Radar is a palindrome!" because the magic square of the Roman Empire involves the Latin phrase "PATER NOSTER" or "OUR FATHER" and the palindromes SATOR, ROTAS, TENET, OPERA, AREPO and the Bermuda Triangle mystery involved the Department of Defense trying to use RADAR to locate Flight 19 off of the coast of Fort Lauderdale.

41.) Accordingly, the plaintiff applied for a job at CIA as early as 2002 (approximate time period) when George Tenet was director of CIA prior to Porter Goss, Bob Gates, Michael Hayden, Gina Haspel, etc..

42.) With regards to the mystery of TENET being on the magic square of the Roman Empire, George Tenet's last name is a palindrome similar to George Soros's last name (SROS is an anagram of ROSS as in Rick Ross and could be an acronym for "Saint Ronald of Soapstone" who is a devout Catholic

that visited the Vatican back in 2002 with his ex-wife Sabine Aisha Jules (from Haiti).

43.)    Nostradamus predicted that there would be someone named Ogmios (Celtic deity) and Mabus in the future with an emphasis on Gog and Magog, although many people do not believe that Nostradamus was actually an accurate prophet.

44.)    Finally, the plaintiff believes that Large Hadron Collider (LHC) at CERN/Switzerland and FermiLab (in Illinois) can create "mini black holes" because it appears as if the Large Hadron Collider has already discovered the Higgs Boson which is necessary for the formation of mass in Big Bang cosmology and Big Bang nucleosynthesis.

## V.) COUNT ONE: THE WRONGFUL INSTITUTION OF LEGAL PROCEEDINGS/MALICIOUS PROSECUTION

45.)    Arizona first recognized a claim for civil malicious prosecution in 1932. See *Ackerman v. Kaufman, 41 Ariz. 110, 112-114, 15 P.2d 966, 967 (1932)*.

46.)    While often called malicious prosecution, that term actually applies to the criminal context, and the proper term in the civil context is the wrongful institution (or use) of legal proceedings. See *Bradshaw v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 411, 414 n.1, 758 P.2d 1313, 1316 n.1(1988); Smith v. Lucia, 173 Ariz. 290, 291 n.1, 842 P.2d 1303, 1304 n.1 (Ct. App. 1992)*.

47.)    The wrongful institution of legal proceedings "is a cause of action not favored by the law." *Nataros v. Superior Court, 113 Ariz. 498, 500, 557 P.2d 1055, 1057 (1976)*.

48.)    To prove a claim for wrongful institution of civil proceedings, the plaintiff must prove the defendant: (1) instituted a civil action (2) without probable cause (3) that was motivated by malice, (4) terminated in the

plaintiff's favor, and (5) damaged the plaintiff. See Bradshaw, 157 Ariz. at 416-17, 758 P.2d at 1318-19 (citing ***Carroll v. Kalar, 112 Ariz. 595, 596, 525 P.2d 411, 412 (1976))***. See also RAJI (Civil), 5th Intentional Torts 19 (Malicious Prosecution) (citations omitted).

49.) Because of the fact that the plaintiff is African-American, it can be stated with substantial certainty that he is a member of a suspect classification of discrete and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

50.) As such, any federal, state, or local laws/regulations (restricting the plaintiff from being on the ballot in this particular state for the primary and general election (assuming that the FBI plays a large role in monitoring the election process in 2020 and beyond) and profiling the plaintiff as an Arab, Middle Easterner, or Muslim) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

51.) More specifically, the burden of proof and persuasion rests squarely with the sole defendant FBI to show by a preponderance of the evidence that any federal, state, or local laws (restricting the plaintiff from being placed on the primary and general election ballot in this state (and assuming the FBI plays a large role in monitoring the elections process in 2020 and beyond) and racially-profiling the plaintiff as an Arab, Middle Easterner, or Muslim) applying to the plaintiff must be "narrowly-tailored to a compelling government objective." (rather than the lower

level of being "rationally-related to a legitimate government objective in which the burden of proof and persuasion rests squarely with the plaintiff).

52.) The plaintiff argues that the sole defendant FBI committed the wrongful institution of legal proceedings and/or malicious prosecution by racially profiling the plaintiff as an Arab, Middle Easterner, or Muslim around 2001 when the plaintiff is a Catholic, African-American from the Washington, D.C. area. Furthermore, it would also be an Equal Protection violation to subject the plaintiff to counterintelligence or COINTELPRO or get a FISA warrant simply because the plaintiff had a Cuban fiance in 1999 named Rachel Garcia or to consider the plaintiff to be a "person of interest" in the same investigation involving Steven Hatfill's harassment lawsuit against the FBI when the plaintiff was merely an apprentice or intern at NIH/NHLBI/DHVD working under the supervision of Dr. Cynthia Dunbar and Dr. John Tisdale. The court can take judicial notice that the plaintiff does not mind or is not offended by the possible prospect of being an "intelligence subject" to at least one American intelligence agency such as CIA, DIA, NSA, or NRO. The court can also take judicial notice that the plaintiff can not prove with substantial certainty or by a preponderance of the evidence that he is in fact an "intelligence subject" as such a burden of proof and/or persuasion would be almost insurmountable whereby a scintilla of evidence would seem to be sufficient and/or clear and convincing evidence if not evidence beyond a reasonable doubt.

53.) The plaintiff argues that the sole defendant has committed the wrongful institution of legal proceedings or malicious prosecution even though the plaintiff has never been indicted before a grand jury or by information by a U.S. attorney, district attorney, or attorney general because of the fact that "racial profiling" a black man as an Arab or Muslim is enough to commence an action for the tort of the wrongful institution of legal proceedings and/or malicious prosecution.

## XIV.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy at law in the form of a judgment in the amount of $80,000 (eighty thousand dollars). This remedy at law would be appropriate considering the fact that the sole defendant the FBI has committed the wrongful institution of legal proceedings/malicious prosecution, gross negligence, the intentional infliction of emotional distress (IIED), and invasion of privacy through "intrusion upon seclusion" and "false light." Moreover, the sole defendant FBI has committed a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA). Furthermore, the sole defendant FBI (acting on behalf of the executive branch of the federal government and Department of Justice) has violated the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S Constitution in addition to having violated the Privileges

and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution, the Fourth Amendment rights to a "reasonable expectation of privacy" (see ***Katz v. United States***, supra) and perhaps invoking a broad assertion and interpretation of the Eighth Amendment right to be free from cruel and unusual punishment.  In asserting this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) The remedy at law in the form of a judgment in the amount of $80,000 (eighty thousand dollars) would also be appropriately considered to be punitive, compensatory, treble, actual, presumed, and special damages for the defendants' commission of the wrongful institution of legal proceedings/malicious prosecution, negligence (or negligence per se) in addition to a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA).

B.) The remedy at law in the form of a judgment in the amount of $80,000 would also be considered appropriate given that it has been proved that the sole defendant the FBI has violated the plaintiff's rights with regards to the Equal Protection Clause and Due Process Clause (inherent from the Fifth and Fourteenth Amendments) and the Privileges and Immunities Clause (of Article IV, Section 2,

Clause 1) in addition to the Fourth Amendment right to a reasonable expectation of privacy and perhaps the Eighth Amendment right to be free from cruel and unusual punishment.

C.) The plaintiff is also requesting the equitable remedy of an injunction or specific performance mandating that the defendant FBI have to "cease and desist" conducting surveillance and/or COINTELPRO on the plaintiff given that he is a Catholic, African-American from Washington, D.C. who was merely an intern and/or apprentice at NIH/NHLBI/Division of Hematology (under Dr. Cynthia Dunbar and Dr. John Tisdale) and that the plaintiff is not a Middle Easterner, Arab, or Muslim from a foreign country such as Saudi Arabia, Qatar, Iraq, Syria, Iran, Oman, and is certainly not involved in any crisis involving Houthis who are involved in a conflict between Saudi Arabia and Iran and is not associated with the Palestinian Liberation Organization (PLO) led by Mahmoud Abbas or any similar organizations such as Hezbollah or Hamas.

D.) With regards to the plaintiff requesting the equitable remedy of an injunction or specific performance mandating that the defendant FBI have to "cease and desist" conducting surveillance and/or COINTELPRO on the plaintiff given that he is a Catholic, African-American from Washington, D.C. who was merely an intern and/or apprentice at NIH/NHLBI/Division of Hematology (under Dr. Cynthia

Dunbar and Dr. John Tisdale), the court should take judicial notice that even

though the plaintiff does not mind the possibility of being an "intelligence subject"

with at least one American intelligence agency, the whole idea that a FISA warrant

should be issued against plaintiff is preposterous given that the plaintiff no longer

has a Cuban fiance named Rachel Garcia or Magna Gargallo Perez and also

because neither Rachel Garcia nor Magna Perez are "intelligence assets" for CIA,

DIA, NSA, etc. (indicating that they are merely normal civilians who had to endure

the intense restrictions of the Cuban government of Fidel and now Raul Castro).


Respectfully submitted,


Ronald Satish Emrit

6655 38th Lane East

Sarasota, Florida 34243

(703)936-3043

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com